# Wytheville

THE WYCKOFF PIPE & CREOSOTING COMPANY, INC.
v. W. G. SAUNDERS.

June 10, 1940.

Record No. 2219.

Present, All the Justices.

The opinion states the case.

*Thomas H. Willcox,* for the plaintiff in error.

*Charles B. Godwin, Jr.,* and *William M. Birdsong,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

The Wyckoff Pipe & Creosoting Company, Inc., sometimes hereinafter referred to as Wyckoff or as the plaintiff, is a corporation engaged in the business of creosoting wood products. The process of creosoting employed by it involves the removal of moisture from the wood and the forcible penetration of the sapwood with creosote oil. The purpose of the treatment is to preserve and protect the wood.

According to standard specifications for "The Preservative Treatment of Southern Pine Poles by Pressure Processes," recommended by the American Wood-Preservers' Association, hereinafter referred to as A. W.-P. A., the penetration of preservative in a pine pole treated with eight pounds of creosote per cubic foot shall be "not less than 2.5 in., unless 85 per cent of the sapwood is penetrated." These specifications were prepared by a committee composed of buyers and sellers of poles and engineers of public utilities. They are based upon the presumption that the wood to be treated will be thoroughly cleaned of bark and skin.

W. G. Saunders, hereinafter referred to as the defendant, is engaged in the business of buying and selling lumber,

poles and piling. He entered into an oral contract with Wyckoff to have it creosote some pine poles for him.

The terms of the contract, the measure of its fulfillment, and the amount of damages for its breach, if any, are in dispute.

Action was brought by Wyckoff against Saunders to recover the sum of $567.72, with interest, as the contract price for the creoosote treatment of 179 poles.

The defendant pleaded the general issue and filed a special plea for recoupment of damages in the sum of $2,567.22, for the alleged improper processing of the poles in breach of the contract.

The case, by consent of the parties, was heard by the trial judge without a jury. The judge awarded the defendant $1,052.28, a sum arrived at by adjudging that 54 poles were not properly treated, allowing $30 per pole as the cost of replacement, and deducting from this sum $567.72, the contract price for treating the poles.

The plaintiff's principal assignment of error is that the judgment of the court is contrary to the evidence and without evidence to support it. Several other assignments of error relate to the admission of certain evidence, and to the amount of the damages allowed.

The defendant assigns as cross-error the inadequacy of the damages awarded.

Wyckoff contended that its oral contract with Saunders simply provided for an eight pound creosote oil treatment, empty cell process, which was properly given to the poles, and that no A. W.-P. A. specifications were mentioned, nor any depth or degree of oil penetration specified.

Saunders, on the other hand, contended that the contract was that the poles were to be treated with eight pounds of creosote oil per cubic foot, conforming to the regular specifications of the A. W.-P. A. as to grade of oil and sapwood penetration, that is, eighty-five to one hundred per cent sapwood penetration; that the poles, known by Wyckoff to be required for a specific use, had not been creosoted to comply with those specifications; and that he was damaged in

the amount of the sum required to be expended by him in the replacement of the poles not creosoted in accordance with the contract.

The judgment complained of cannot be set aside unless it appears from the evidence that it is plainly wrong or without evidence to support it. Virginia Code 1936, section 6363.

The conclusions of the trial judge on questions of fact are entitled to peculiar weight and consideration because he saw and heard the witnesses testify to the facts and circumstances. *First National Bank* v. *Roanoke Oil Company*, 169 Va. 99, 192 S. E. 764, and cases cited.

The evidence is conflicting on many material points. A brief summary of the testimony and exhibits shows the following evidence in support of the trial judge's conclusions.

Saunders had a contract with the Pamlico Ice and Light Company, hereinafter referred to as Pamlico, to furnish, creosote and deliver along its right of way a large number of pine poles to be used in the construction of its electric transmission line. A Mr. Woodward, the superintendent in charge of the Wyckoff plant in Norfolk county, Virginia, requested Saunders to give Wyckoff a contract for the creosoting of some of these poles. Saunders made an inquiry as to the price and class of treatment. Wyckoff, by its letter dated May 25, 1936, offered to give "12 lbs. treatment full cell process, Grade No. 1 creosote oil American Wood-Preservers' Association specifications, at $.36 per cu. ft." Saunders told Woodward that he only wanted a regular eight pound pole treatment. Woodward informed him that the eight pound treatment would give at least 85 to 100 per cent sapwood penetration, meeting the A. W.-P. A. specifications. Saunders, relying upon this representation, delivered 179 poles to Wyckoff in three separate lots on November 10th, November 25th and December 11th, 1936, to be creosoted in accordance with the above specifications, at $.36 per cubic foot. Saunders specifically directed, in writing, that the 54 poles delivered on December 11th, were to be treated in accordance with the quotation of May 25, 1936.

Saunders testified that Wyckoff knew the poles were to be used in the electric transmission line of the Pamlico Company. He introduced letters showing the following facts: that on December 15, 1936, he wrote Wyckoff that he had completed the delivery of the above power line poles to Pamlico, and that Pamlico would like to have a letter from Wyckoff stating that in accordance with its agreement the poles had been treated "with 8 pounds of creosote oil per cu. ft.," and conformed "to the regular specifications as to grade of oil and sapwood penetration;" that, on December 12, 1936, Wyckoff certified that the poles had been so treated; and that on December 16, 1936, Wyckoff also wrote to Pamlico, saying, "These poles and this lumber have been treated with 8 pounds of creosote oil per cu. ft. retention. The grade of oil has been in accordance with the specifications of American Wood Preservers Association for Grade 1. The poles have been creosoted in accordance with the usual requirements of the American Wood Preservers Association for treatment and for sapwood penetration and in other respects."

Saunders further said that the poles delivered to Wyckoff for treatment were properly cleaned and prepared to take creosote; that after Wyckoff sent word that some of the poles delivered to it in the last lot needed cleaning he sent a man to clean them; and that there was no contention made by Wyckoff until January 18, 1937, a date subsequent to notice of its breach of contract, that the poles had not been properly skinned before application of the preservative.

After the poles had been erected in the transmission line of Pamlico, it was discovered that many of them did not show the minimum penetration of preservative set by A. W.-P. A. specifications. Expert witnesses testified that poles in such condition would deteriorate more rapidly and create a hazardous situation necessitating their replacement at a much earlier date.

Pamlico declined to pay Saunders for the poles deficient in creosote penetration. It instituted suit against him and

recovered damages for the expense incident to replacing the deficient poles with poles properly creosoted.

We are aware that Wyckoff offered testimony to the effect that in its original contract there was no mention of the penetration to be obtained or the method to be used in the treatment of the poles, except to specify a regular eight pound treatment, empty cell process; that an eight pound treatment, empty cell process, was given; that the poles were not properly prepared for the treatment; that it did not know for what use the poles were intended; and that the defective poles had not been identified as those treated by it. This evidence raised questions of fact which were disposed of by the trial judge adversely to the plaintiff.

We are of opinion that there was sufficient evidence to show that at least 54 poles, as found by the trial judge, did not have the creosoted penetration complying with A. W.-P. A. specifications. The 17 poles in the last lot, which Wyckoff claims were not properly skinned by Saunders after he had been given notice of their condition, have not been included in this estimate, although it was strongly contended that Wyckoff should not have undertaken to creosote them when it knew that proper oil penetration could not be obtained.

It is clear from the evidence that substantial damage has been occasioned to Saunders by Wyckoff's breach of its contract. The liability of Saunders to Pamlico was measured by the cost of replacing any of the 179 poles in its line which did not conform to his contract with Pamlico. Wyckoff, in turn, is responsible to Saunders for such liability as was incurred by Saunders by reason of the failure of Wyckoff to give the poles an 85 per cent oil penetration in conformity with its contract with Saunders.

The damages were such as fairly, reasonably and naturally arose from the breach of the contract. An absolute certainty as to the amount of the damages is not essential when the existence of a loss has been established. The quantum may be fixed when the facts and circumstances are such as to permit of an intelligent and probable

estimate thereof. *Krikorian* v. *Dailey,* 171 Va. 16, 197 S. E. 442; *Manss-Owens Co.* v. *H. S. Owens & Son,* 129 Va. 183, 105 S. E. 543; *Chesapeake & Potomac Telephone Co.* v. *Carless,* 127 Va. 5, 102 S. E. 569, 239 A. L. R. 943.

In ascertaining the damages, the trial court held that they were measured by the extent of the liability of Saunders for the cost of replacing, in the use for which they were originally intended, the poles improperly creosoted by Wyckoff with poles creosoted to a minimum oil penetration of 85 per cent of the sapwood. The evidence of expert witnesses varied as to these costs. One said each of such replacements would require an expenditure of $35 to $40; another said it would require $30.30.

■ Taking into consideration all of the surrounding circumstances and conditions, we are unable to say that an allowance of $30 per pole is not a fair and intelligent estimate of the liability incurred by Saunders as a result of the breach of the contract by Wyckoff.

■ It was obviously impossible, under the circumstances, to arrive at the exact amount of damages. They could be determined only approximately upon probable estimates from the best judgment of those who had experience in the field in question. One guilty of the breach of a contract cannot be allowed to escape liability merely because of the uncertainty of the precise amount of damages, where the damages are substantial and the only uncertainty is as to their true amount. *Krikorian* v. *Dailey, supra; Manss-Owens Co.* v. *H. S. Owens & Son, supra.*

There is no merit to the remaining assignments of error and cross-error. All of the evidence to which the plaintiff objected was relevant to the issues in question. The trial judge, sitting without a jury, seeking to arrive at a just conclusion on the merits of the case, gave it such weight as he thought it was entitled to.

We find no error in the judgment of the trial court and it will be affirmed.

*Affirmed.*