COURT OF APPEALS OF VIRGINIA

Present:  Judges Baker, Willis and Overton
Argued at Norfolk, Virginia

COMMONWEALTH OF VIRGINIA,
 DEPARTMENT OF TRANSPORTATION AND
 WILLIAM E. LANDSIDLE,
 COMPTROLLER OF THE COMMONWEALTH
                                         MEMORANDUM OPINION[*] BY
v.          Record No. 1665-97-1      JUDGE JERE M. H. WILLIS, JR.
                                             MARCH 3, 1998
ASPHALT ROADS & MATERIALS CO., INC.

          FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                      Frederick B. Lowe, Judge

               Mark S. Paullin, Assistant Attorney General
               (Richard Cullen, Attorney General, on
               briefs), for appellants.

               Jack Rephan (Beth Hirsch Berman; Hofheimer,
               Nusbaum, McPhaul & Samuels, P.C., on brief),
               for appellee.


     The Commonwealth of Virginia, Department of Transportation

(VDOT) appeals a judgment of the trial court granting additional

compensation to Asphalt Roads & Materials Co., Inc. (Asphalt) on

behalf of its subcontractors, Kevcor Corporation (Kevcor) and

M.M. Gunter & Sons, Inc. (Gunter).  VDOT contends that the trial

court erred:  (1) in awarding additional compensation for

backfill material and for disposal of unsuitable material; (2) in

awarding "undercut" compensation for excavation that was not

"undercut"; (3) in failing to limit damages for "undercut" to the

amount claimed by Asphalt; (4) in awarding damages for

_____

        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

construction delays without proof of the actual costs incurred by those delays; (5) in admitting hearsay evidence from an industry manual to calculate equipment-related damages; and (6) in incorrectly calculating days lost at a worksite operated by Gunter.  Asphalt contends that the trial court erred in denying damages for unabsorbed overhead.  For the reasons that follow, we affirm in part, reverse in part, and remand.

Asphalt contracted with VDOT to widen Landstown Road in Virginia Beach.  The contract incorporated by reference the 1991 VDOT Road and Bridge Specifications (Specifications), the project plans and drawings, the 1989 VDOT Standards, and VDOT's project proposal.

Asphalt filed an administrative construction claim requesting additional compensation for itself and on behalf of Kevcor and Gunter.  See Code § 33.1-386.  The Commonwealth Transportation Commissioner allowed part of the claim.  Asphalt then filed this action seeking recovery for "such portion of the claims as were denied by the Commissioner."  See Code § 33.1-387.  The trial court denied Asphalt any further recovery for itself, but allowed further recovery on behalf of Kevcor and Gunter.

I.

Asphalt subcontracted with Kevcor to perform drainage and water and sewer system work.  During construction, a VDOT inspector informed Kevcor that material being excavated for the installation of the storm drainage system was unsuitable for use

as backfill.[1]  Kevcor requested additional compensation for costs incurred in acquiring off-site and placing suitable backfill material and in disposing of the unsuitable excavated material. VDOT responded that according to the specifications, the bid price for the pipes and backfill included these associated costs.  However, VDOT paid Kevcor additional compensation for backfill material, based upon the plan dimensions and the contract unit price for select borrow.[2]  VDOT also allowed additional compensation for disposal of the unsuitable material.

The trial court awarded Asphalt, on behalf of Kevcor, additional compensation of $53,500.26 for backfill imported to the site and $98,286.12 for off-site disposal of the unsuitable excavated material.[3]  VDOT contends that the contract bars recovery of additional compensation for these items.  We agree.

Our resolution of this issue turns upon a reading of the parties' contract.  Because the parties presented for our review all of the evidence necessary to construe the contract, its

---

[1]Specifications § 101.02 defines "backfill" as "Material used to replace or the act of replacing material removed during construction . . . ."

[2]Specification § 101.02 defines "select borrow" as "borrow material that has specified physical characteristics."  "Borrow" refers to suitable material from sources outside the roadway. Id.

[3]The trial court had jurisdiction over this matter "as to such portion of the claim as was denied by the Commissioner." Code § 33.1-387.  Contrary to the assertion made by Asphalt, the trial court had the authority to determine not only the amount of any award, but also whether Asphalt was entitled to an award.

meaning and effect is a question of law, capable of interpretation by us on appeal.  See Fry v. Schwarting, 4 Va. App. 173, 180, 355 S.E.2d 342, 346 (1987).

Section 302 of the Specifications controls construction of drainage structures.  Measurement and payment for installation of drainage structures is governed by § 302.04, which states:

> Pipe shall be paid for at the contract unit price per linear foot.  This price shall include excavating, when not a pay item; sheeting; shoring; dewatering; disposing of surplus and unsuitable material; backfill material; and restoring existing surfaces.

Section 520 of the Specifications addresses installation of water and sanitary sewer facilities.  Section 520.06 states:

> Water mains, water service lines, sanitary sewer pipe, and sanitary sewer force mains will be measured in linear feet of pipe through all valves and fittings, complete-in-place, and will be paid for at the contract unit price per linear foot. This price shall include excavating; testing; disinfecting; backfilling; compacting; dewatering; disposing of surplus and unsuitable material; . . .; and restoring property.

Asphalt argues that the foregoing provisions are ambiguous when considered in conjunction with the other terms of the contract and the surrounding circumstances.

Asphalt claims that Specifications §§ 302.04 and 520.06 must be interpreted with reference to § 303.06, which governs the measurement and payment of earthwork.  Specifications § 303.06(d) states in part that:

> Furnishing and placing backfill material . . . will be included in the price for

excavation and will not be measured for separate payment unless specific material is a pay item for backfill or unless suitable material is not available within the construction limits.  When a specific material is a pay item, the unit of measure of the material will be in accordance with the unit specified in the Contract.  When suitable backfill material is not available within the construction limits, the material furnished and placed by the Contractor will be paid for in accordance with Section 109.05.[4]

The backfilling and unsuitable material disposal concerned in this case were not "pay items."  Specifications § 101.02 defines "pay item" as "a specifically described unit of work for which a price is provided in the Contract."

---

[4]Specifications § 109.05 states in part that:

Extra work performed in accordance with the requirements and provisions of Section 104.03 will be paid for at the unit prices or lump sum specified in the work.

Specifications § 104.03 states that:

The Contractor shall perform unforeseen work for which there is no price specified in the Contract whenever it is deemed necessary or desirable.  Such work shall be performed in accordance with these specifications and as directed by the Engineer and will be paid for in accordance with Section 109.05.

Asphalt argues on appeal that these sections do not encompass "minor structure excavation," which is measured and paid for under § 303.06.  However, the record does not indicate that Asphalt set forth that claim with particularity to the Commissioner.  Because the Commissioner had no opportunity to deny additional compensation for minor structure excavation, the trial court would not have jurisdiction to hear the claim.  Code § 33.1-387.

- 5 -

While acknowledging that the Commonwealth cannot be estopped, Asphalt cites VDOT correspondence that, referencing § 303.06, allowed additional compensation for furnishing backfill and disposal of unsuitable excavation material per the dimensions provided in the plans. However, in that correspondence, VDOT acknowledged employing a "liberal" interpretation of the terms of the contract in order to accommodate Asphalt and to resolve the issues. In the same correspondence, VDOT noted that the contract price included the cost of supplying suitable material and disposing of unsuitable material.

We find no ambiguity as to payment for backfill or disposal of unsuitable material.

> "An ambiguity exists when language admits of being understood in more than one way or refers to two or more things at the same time." The fact that the parties attribute to the same terms variant meanings does not necessarily imply the existence of ambiguity where there otherwise is none.

Smith v. Smith, 3 Va. App. 510, 513–14, 351 S.E.2d 593, 595 (1986) (citations omitted). Despite the variant interpretations placed on the terms of the contract by the parties, §§ 302.04 and 520.06 state clearly and unambiguously that the unit price shall include the cost of backfill material and disposal of surplus and unsuitable material.

Asphalt also argues that additional compensation is due, because the parties did not contemplate the quantity of unsuitable material encountered at the project site. Special

- 6 -

Provision Copied Notes § 104.03 provides in part that:

> During the progress of the work, if subsurface or latent physical conditions are encountered at the site differing materially from those indicated in the contract . . . the party discovering such condition shall promptly notify the other party in writing . . . .
>
> Upon written notification, the Engineer will investigate the conditions, and if he/she determines that the conditions materially differ and cause an increase or decrease in the cost or time required for the performance of any work under the contract, an adjustment, excluding anticipated profits, will be made and the contract modified in writing accordingly.

Cf. Chantilly Constr. Corp. v. Department of Highways & Transp., 6 Va. App. 282, 292, 369 S.E.2d 438, 444 (1988) (stating general rule that contractor will not be entitled to additional compensation due to an unforeseen difficulty).

The exact quantity of unsuitable material was not known prior to excavation. VDOT identified the presence of the unsuitable material and allowed compensation in accordance with the plan dimensions and terms of the contract. However, the record does not establish that Kevcor was entitled to further compensation for backfill or for off-site disposal of unsuitable backfill material. Moreover, Specifications § 102.04 provides that:

> The submission of a bid will be considered conclusive evidence that the bidder has examined the site of the proposed work, proposal, plans, standard drawings, specifications, supplemental specifications, special provisions, special provision copied notes, and any other documents specified in

> the proposal before submitting a bid and is satisfied as to the conditions to be encountered in performing the work and requirements specified in the proposal.

> \* \* \* \* \* \* \*

> The submission of a bid will be considered conclusive evidence that the bidder is satisfied with regard to the subsurface conditions to be encountered in the work.

Thus, the evidence failed to establish that Kevcor was entitled to further compensation for backfill or for off-site disposal of unsuitable backfill material. We reverse the trial court's award of $151,786.38 to Asphalt for those items.

II.

VDOT contends that the trial court erred in awarding Asphalt, on behalf of Kevcor, $9,400 in additional compensation for undercut. VDOT argues that no evidence supports the finding that undercut occurred. We agree and reverse the trial court's award for this item.

Specifications § 303.06(a)(3) defines "undercut" as the excavation of unsuitable material from below the lower of "the bottom of the lower theoretical slab or culvert thickness or below the excavation limits shown on the plans." Under familiar principles, we review the evidence in the light most favorable to the prevailing party and place upon the aggrieved party the burden to show that reversal is appropriate. See Lutes v. Alexander, 14 Va. App. 1075, 1077, 421 S.E.2d 857, 859 (1992).

The plans required the contractor to excavate one foot below

- 8 -

the pipe.  Thus, undercut would occur only to the extent that the contractor excavated more than one foot below the bottom of the pipe.  Nothing in the record supports a finding that Kevcor excavated to that level.  Therefore, we reverse the award for excavation of undercut.  We need not address whether the trial court erred in awarding Asphalt a sum greater than was sought in its motion for judgment.

### III.

VDOT next contends that the trial court erred in awarding Asphalt damages in the amount of $138,544.88 on behalf of Gunter and in the amount of $115,680.72 on behalf of Kevcor for five construction delays attributable to VDOT.  VDOT argues:  (1) that Asphalt failed to prove the "actual costs incurred" due to the delays, (2) that the trial court erred in admitting hearsay evidence, and (3) that the trial court miscalculated the number of days that Gunter's equipment remained idle at its Holland Road Pit.  Asphalt contends that the trial court erred in denying it damages for unabsorbed overhead costs.

### A.  Proof of Actual Costs

Generally, compensation is determined by computation of actual damages.  "'[I]t is sufficient if a reasonable basis of computation is afforded.'"  Washington Golf & Country Club, Inc. v. Briggs and Brennan Developers, Inc., 198 Va. 586, 592, 95 S.E.2d 233, 237 (1956) (quotation omitted).  See 5C Michie's Jurisprudence Damages § 19 (1983).  "'[A]bsolute certainty as to

the amount of damages is not essential when the existence of a loss has been established.  The quantum may be fixed when the facts and circumstances are such as to permit . . . an intelligent and probable estimate thereof.'"  Pebble Bldg. Co. v. G.J. Hopkins, Inc., 223 Va. 188, 191, 288 S.E.2d 437, 438 (1982) (quoting Wyckoff Pipe & Creosoting Co., Inc. v. Saunders, 175 Va. 512, 518–19, 9 S.E.2d 318, 321 (1940)).

Asphalt, Kevcor, and Gunter presented no evidence of actual damages resulting from delay.  See id. (upholding award for delay damages based upon difference between estimated and actual costs).  Rather, they introduced testimony of lay witnesses calculating equipment-related delay damages by using an industry manual used to calculate rental values of such equipment.  Because rental calculations were not shown to constitute a reasonable approximation of actual damages, we reverse the judgment for damages resulting from delay and remand the case to the trial court for determination of actual damages.

## B.  Hearsay

The trial court committed reversible error in admitting passages of the "Rental Rate Blue Book for Construction Equipment" into evidence as exhibits.  This book, and its component sections, was hearsay.

An expert witness may give testimony and render an opinion based upon data made known to him prior to trial.  If the data is of a type normally relied upon by others in the particular field

of expertise, that data need not be itself admissible in evidence. Code § 8.01-401.1. To the extent called to the attention of an expert witness by cross-examination or relied upon by him in direct examination, statements contained in published treatises, etc., established as reliable authority by testimony or by stipulation, shall not be deemed hearsay and may be read into evidence, but may not be received as exhibits. Id.

Asphalt presented only lay testimony as to the equipment costs resulting from delay. Its witnesses were not qualified as experts. The witnesses did not tender expert opinions based on reference to the Blue Book. Rather, the Blue Book itself was tendered as authoritative evidence of its contents. No testimony or stipulation established the Blue Book as a document relied upon by experts in the construction equipment appraisal field. See Kern v. Commonwealth, 2 Va. App. 84, 87, 341 S.E.2d 397, 399 (1986) (expert jewelry appraiser relied upon unidentified market data brochure which was not in evidence and testified that its use was standard in appraisal profession). As an out-of-court statement offered to prove the truth of the matter asserted, the Blue Book was hearsay. See Papuchis v. Commonwealth, 15 Va. App. 281, 422 S.E.2d 419 (1992) (reversing gambling conviction upon error in admitting into evidence sports publications relied upon by expert). The Blue Book fell into no recognized exception to the hearsay rule and was, therefore, inadmissible. Cf. Code § 8.01-401.1 (permitting admission of learned treatises upon

direct examination of an expert witness); Code § 8.01-419.1

(National Automobile Dealers' Association books admissible to

prove the fair market value of an automobile).

> Asphalt relied upon the Blue Book to prove damages.
> "[A]dmission of hearsay expert opinion
> without the testing safeguard of
> cross-examination is fraught with
> overwhelming unfairness to the opposing
> party.  No litigant in our judicial system is
> required to contend with the opinions of
> absent 'experts' whose qualifications have
> not been established to the satisfaction of
> the court, whose demeanor cannot be observed
> by the trier of fact, and whose
> pronouncements are immune from
> cross-examination."

CSX Transportation, Inc. v. Casale, 247 Va. 180, 183, 441 S.E.2d

212, 214 (1994) (quoting McMunn v. Tatum, 237 Va. 558, 566, 379

S.E.2d 908, 912 (1989)).  Because it was used to prove the amount

of actual damages, admittance of the Blue Book into evidence was

both material and prejudicial to VDOT's interests.  See id.  We

reverse this ruling.

### C.  Calculation of Days of Delay

VDOT contends that the trial court erred in calculating the

number of days Gunter's equipment sat idle at the Holland Road

Pit because of delay.[5]  We agree.

The days for which delay compensation may be allowed must be

---

[5]While the Commonwealth failed to argue specifically that the length of the delay was incorrectly calculated, the record shows that the Commonwealth introduced evidence concerning the length of the delay and laid that aspect of the damages award before the trial court.

days on which the equipment would otherwise have been used. The evidence established that Gunter normally would not have worked on Sundays, holidays and, possibly, Saturdays. Therefore, in calculating the number of days for which an award of compensation could be made, the trial court should have taken into account the non-working days embraced within the applicable time period. The trial court failed to do so. Accordingly, we reverse its calculation of days for which compensation might be allowed and remand that issue for recalculation.

### D. Unabsorbed Overhead Costs

Asphalt contends that the trial court should have used the Eichleay formula to calculate its unabsorbed overhead damages.

We need not address the merits or application of the Eichleay formula to determine the amount of unabsorbed overhead during a delay. The trial court considered the Eichleay formula and concluded that the evidence did not support its reliability to determine a damage award in this case. The record supports this conclusion. Finding no error, we affirm this ruling of the trial court.

<u>Affirmed in part,
reversed in part,
and remanded.</u>

- 13 -