## Richmond

### THE PEBBLE BUILDING COMPANY, ET AL.

### V.

### G. J. HOPKINS, INCORPORATED

March 12, 1982.

Record No. 801946.

Present: Carrico, C.J., Cochran, Poff, Compton, Thompson, Stephenson, JJ., and Harrison, Retired Justice.

*S. D. Roberts Moore (Eugene E. Derryberry; Gentry, Locke, Rakes & Moore,* on brief), for appellants.

*Charles H. Osterhoudt (Michael J. Aheron; Osterhoudt, Ferguson, Natt, Aheron & Agee, P.C.,* on brief), for appellee.

PER CURIAM.

In this construction contract case, we decide whether the evidence is sufficient to sustain an award of delay damages in favor of a subcontractor against the general contractor.

The Pebble Building Company, a defendant below, was the prime contractor for construction of a municipal parking facility in the City of Roanoke. The contract, as amended by change orders, required completion of the project in May of 1977, within 638 calendar days. In August of 1975, G. J. Hopkins, Incorporated, the plaintiff below, was awarded the electrical subcontract. Construction began during that month. Substantial completion of the job was delayed until June of 1978; final completion occurred in August of 1978.

In submitting its bid for the electrical work, Hopkins estimated that performance of its contract would require nearly 7,700 man-hours, and that its labor cost would be $38,773.65. Upon completion of the work, Hopkins had expended about 14,000 hours and computed its total labor cost to be $76,744.28.

Hopkins filed suit to recover its actual, direct labor costs in excess of its estimated direct labor costs, alleging that the excess

was attributable to delays caused by Pebble. Following a bench trial, the court below decided that Pebble was responsible for an unexcused project delay of about 14 months. Holding that the measure of damages was "the uncontradicted excess labor costs over the original labor estimates of" Hopkins, the trial court ruled the electrical subcontractor was entitled to recover delay damages of $37,970.63 against Pebble and its bonding company, Commercial Union Insurance Company, the other defendant below, which had assumed the performance of Pebble's contract.

On appeal, defendants argue that the trial court imposed damages for delays not shown by the evidence to be attributable to Pebble. We disagree.

There was abundant evidence to sustain the finding that Pebble caused the delays for which damages were awarded Hopkins. For example, the record shows that progress was retarded by incompetence of one of Pebble's job superintendents, by Pebble's frequent replacement of its supervisors, and by Pebble's failure to properly coordinate the work of the various subcontractors, including Hopkins.

This case is unlike *Hale* v. *Fawcett,* 214 Va. 583, 202 S.E.2d 923 (1974), upon which defendants heavily rely. There, this Court reversed a judgment in favor of the plaintiff in a negligence action when there was evidence of damages from separate causes, as to a portion of which defendant was not responsible. The Court held the plaintiff failed to prove with reasonable certainty the share of the damage for which defendant could be held liable. But here, Hopkins proved with sufficient certainty that failures of commission and omission of Pebble resulted in the delays for which plaintiff was awarded damages. Thus, there is no merit to defendants' claim that Hopkins' evidence failed to allocate the damages between extra work caused by Pebble and extra work resulting from delays alleged not to be Pebble's responsibility.

Defendants also contend "[t]he evidence offered by Hopkins is insufficient to permit a reasonably accurate calculation of its damages." Hopkins' losses were based on the difference between actual costs incurred and the original estimate of direct labor cost. Defendants say the original bid estimate was "nothing more than an educated guess." We reject that contention.

According to the record, the labor cost estimate was prepared using, in part, manuals customarily employed throughout the electrical contracting industry. They contained approximations of la-

bor units or man-hours required to install the electrical materials called for by the plans and specifications. According to the evidence, past experience had shown Hopkins that these manuals provided relatively accurate and realistic predictions of the labor ultimately required on a properly supervised project. Indeed, there was no evidence that any component of the estimate was incorrect, nor was there evidence that the estimate had been improperly prepared.

The plaintiff has the burden to prove the items of loss with reasonable certainty. "An absolute certainty as to the amount of the damages is not essential when the existence of a loss has been established. The quantum may be fixed when the facts and circumstances are such as to permit . . . an intelligent and probable estimate thereof." *Wyckoff Pipe & Creosoting Company, Inc.* v. *Saunders,* 175 Va. 512, 518-19, 9 S.E.2d 318, 321 (1940). Our examination of this record demonstrates the trial court properly ruled Hopkins met this test.

Accordingly, the judgment below will be

*Affirmed.*