Present:  All the Justices

FAIRFAX COUNTY REDEVELOPMENT AND
HOUSING AUTHORITY

                                        OPINION BY
v.  Record No. 980731      JUSTICE LAWRENCE L. KOONTZ, JR.
                                     February 26, 1999
WORCESTER BROTHERS COMPANY, INC.


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                   Arthur B. Vieregg, Jr., Judge


    In this appeal, we consider whether the trial court's award

of unabsorbed home office expenses to the contractor on a public

construction project following an unreasonable delay by the

contracting government agency was based upon sufficient proof of

the existence and amount of those damages.

                            BACKGROUND

    Under well established principles, we recount only those

facts relevant to our resolution of the appeal.  On September

14, 1995, the Fairfax County Redevelopment and Housing Authority

(the Authority) entered into a contract with Worcester Brothers

Company, Inc. (Worcester Brothers), a general construction

contractor, for site renovations and improvements of Washington

Plaza in Lake Anne Village (the project) in Reston.

    The Authority had originally solicited bids for the project

based on a projected start date in July 1995, with completion of

the work in 150 calendar days from the notice to proceed.  Thus,

the proposed date of substantial completion at the time bids

were solicited was mid-December 1995. Worcester Brothers based its bid on these conditions. However, because the Authority did not award the contract to Worcester Brothers until September 14, 1995, the substantial completion date for the project was moved back to mid-February 1996.

It is not disputed that at the time Worcester Brothers commenced work on the project, the Authority had not yet obtained the necessary clearances from an adjoining property owner to allow work to proceed on a portion of the project site. The Authority did not obtain the clearances until March 6, 1996.

After the work was completed, Worcester Brothers filed notice of potential change #15 (NPC 15) with the Authority's architect seeking additional payment for field office expenses incurred on the job site due to the Authority's delay in obtaining the clearances. Worcester Brothers also claimed it had unabsorbed home office expenses attributable to the delay. In NPC 15, Worcester Brothers calculated its additional field office expenses based upon its daily field office overhead rate multiplied by the 98 days of delay it attributed to the Authority.[1] To calculate its unabsorbed home office expenses,

---

[1]This figure was later revised to represent the actual costs Worcester Brothers incurred in maintaining its workforce on the project site during the delay period.

Worcester Brothers used the so-called "Eichleay formula,"[2] to determine a daily home office overhead rate and multiplied that rate by the same 98 days of delay. The architect, acting on behalf of the Authority, denied the claims made in NPC 15.

On November 4, 1996, Worcester Brothers filed a motion for judgment against the Authority seeking damages for breach of contract based upon the failure to pay NPC 15.[3] The Authority filed an answer denying the allegations of the motion for judgment and raising as an affirmative defense the claim that "[h]ome office damages based on the Eichleay formula are prohibited by Virginia law."

At trial, Worcester Brothers contended that during the delay it incurred both additional field office expenses as a result of having to maintain its personnel at the job site and unabsorbed home office expenses. It presented evidence of its actual field office expenses related to the delay in the amount

---

[2]The Eichleay formula is "the prevailing method" used for calculating a contractor's home office expenses attributable to a government-caused delay on a federal contract. Capital Electric Company v. United States, 729 F.2d 743, 744 (Fed. Cir. 1984).

[3]Worcester Brothers also claimed damages resulting from the cost of snow removal and protecting its equipment from winter weather as a result of the delay in awarding the contract. The trial court dismissed this claim, and Worcester Brothers has not assigned cross-error challenging that ruling.

of $46,359.11. Worcester Brothers' accounting system did not allocate its home office expenses to particular contracts. However, Joseph P. Noonan, Worcester Brothers' president, testified that the unabsorbed home office expenses attributable to the delay amounted to $34,495.89. According to Noonan, that figure was calculated from statements prepared by Worcester Brothers' accountants reflecting the total general and administrative expenses of the company during the relevant contract period and the application of the Eichleay formula to those expenses.

The Authority asserted numerous objections to Worcester Brothers' evidence of damages. Pertinent to the issue presented on appeal, the Authority contended that Worcester Brothers had proven no actual damages as a result of the delay. It contended that the Eichleay formula calculation did not constitute proof of actual damages to a reasonable degree of certainty, but, rather, is merely a method for determining the amount of unabsorbed home office expenses attributable to a particular contract once the existence of such damages has been proven by other evidence. The Authority contended that Worcester Brothers had not shown that its workforce was actually idle as a result of the delay in obtaining the clearances and, thus, that none of its home office expenses was incurred as a result of the delay. Moreover, the Authority contended that the Eichleay formula was

4

"totally and wholly irrelevant" to "a contract governed by state law."

At the conclusion of the evidence, the trial court addressed the Authority's contentions and reasoned that in order to succeed on a breach of contract damage claim for unabsorbed home office expenses resulting from a delay, the contractor was first required to show that it had incurred such damages by establishing that the government had caused the delay; that the contractor's workforce was placed on standby as a result; and that the contractor was not free to engage in work on other projects during the delay. The trial court then found that the Authority's delay was "manifest on this record" and was "egregious" and "frankly inexcusable." The trial court further found that Worcester Brothers' workforce had been on "standby" because the Authority "never could advise the contractor that the area would not be available until a particular date. Instead it was a rolling deadline." Finally, the trial court found that the "rolling deadline" also inhibited Worcester Brothers from seeking other contracts, and thereby minimizing the damage caused by the delay, since it could not be assured of the availability of its workforce for another project.

Having found that Worcester Brothers had satisfied its initial "burden of proving [home office] damages with reasonable certainty," the trial court turned to the question whether the

<u>Eichleay</u> formula could be used to calculate the amount of those damages. Recognizing that other courts had found the <u>Eichleay</u> formula to be "a fair way of approximating" such damages, the trial court noted that after auditing Worcester Brothers' books, the Authority did not contend that any of the specific expenses were inappropriately claimed and that the Authority's witnesses failed "to present any reasoned analysis of why <u>Eichleay</u> is inappropriate." Accordingly, the trial court entered judgment for Worcester Brothers for both the field office expenses ($46,359.11) and the unabsorbed home office expenses as calculated by the <u>Eichleay</u> formula ($34,495.89). The trial court granted the Authority's motion to reconsider, and, after receiving briefs from the parties, sustained its original ruling. We awarded the Authority this appeal.

DISCUSSION

The Authority does not challenge the trial court's determination that the Authority was liable for damages caused by the delay. Nor does the Authority challenge that portion of the judgment attributable to field office expenses. Accordingly, our discussion is necessarily limited to a determination of whether, as specified by the Authority's assignment of error, "[t]he trial court erred in finding that a contractor had proved its <u>home office damages</u> with reasonable certainty." (Emphasis added.) We agree with the trial court's

6

reasoning that the resolution of this issue requires that we first consider whether Worcester Brothers established that it suffered damages in the form of unabsorbed home office expenses attributable to the Authority's delay, and, if so, whether there was adequate proof of the amount of those damages.

Home office expenses, commonly called overhead, include those costs that a contractor must expend for the benefit of its business as a whole. These expenses include, for example, the salaries of office staff, accounting expenses, dues and subscriptions, equipment costs, and utility services. Unabsorbed home office expenses comprise "those overhead costs needlessly consumed by a partially or totally idle contractor. A contractor continues to incur overhead costs during periods of reduced activity or delay on a particular contract. When this occurs, the 'reduced activity' contract no longer 'absorbs' its share of overhead costs." Michael W. Kauffman and Craig A. Holman, The *Eichleay* Formula: A Resilient Means for Recovering Unabsorbed Overhead, 24 Pub. Contr. L.J. 319, 321 (1995)(footnotes omitted).

When a breach by one party imposes a delay on the ability of the other party to perform its obligations under a contract, "the damages are to be measured by the direct cost of all labor and material . . . plus fair and reasonable overhead expenses properly chargeable . . . during the reasonable time required"

to complete performance. E.I. duPont deNemours & Co. v. Universal Moulded Prod., 191 Va. 525, 581, 62 S.E.2d 233, 259 (1950)(emphasis added). In such cases, while the plaintiff must prove its damages with reasonable certainty, "'[a]n absolute certainty as to the amount of the damages is not essential when the existence of a loss has been established. The quantum may be fixed when the facts and circumstances are such as to permit . . . an intelligent and probable estimate thereof.'" Pebble Building Co. v. G.J. Hopkins, Inc., 223 Va. 188, 191, 288 S.E.2d 437, 438 (1982)(citation omitted).

We recognize that not every instance of a delay caused by the other party to a contract will result in a contractor incurring either direct or overhead damages. However, where the evidence shows that a contractor has incurred direct damages as a result of the delay such as additional cost of labor and material, the question whether the contractor also suffered unabsorbed overhead damages necessarily must be determined from the facts and circumstances of the individual case. It is not necessary for the contractor to show that its overhead was increased as a result of the delay, but only that it could not otherwise reasonably recoup its pro rata home office expenses incurred while its workforce was idled by the delay.

Here, the evidence showed that Worcester Brothers incurred actual direct damages as a result of having to maintain its

8

personnel on the job site far beyond the anticipated date of substantial completion.  The record supports the trial court's finding that the Authority was responsible for a delay that caused Worcester Brothers' workforce to be "on standby" and this further prohibited Worcester Brothers from recouping its unabsorbed home office expenses by seeking other contracts during the delay period.  Accordingly, we agree with the trial court's ruling that Worcester Brothers met its burden of proof with respect to the existence of unabsorbed home office expenses attributable to the Authority's delay.

The Authority contends, however, that even if Worcester Brothers proved that it incurred unabsorbed home office expenses as a result of the Authority's delay, the trial court erred in accepting the _Eichleay_ formula as the method for determining the amount of these expenses.  The Authority asserts that the contract provides that disputes between the parties will be governed by Virginia law and, since no legislative act, administrative rule, or case law in Virginia has "adopt[ed] the use of the _Eichleay_ formula in claims against public bodies in

Virginia," the use of the formula "was not within the parties' contemplation at the time the contract was executed."[4]

The Authority is correct in noting that use of the Eichleay formula has not been previously approved in this Commonwealth by legislative or administrative act, nor has its use been addressed in a published appellate court decision relating to a public contract.  However, we are not persuaded by the Authority's contention that a lack of prior authoritative application of the Eichleay formula to a Virginia public contract prevents its application in this instance.  The Eichleay formula is not a legal standard that must be formally approved or adopted; rather, it is merely a mathematical method of prorating a contractor's total overhead expenses for a particular contract.[5]  As such, the question before the trial

_____

[4]On brief, the Authority asserts that certain items were improperly included in the overhead expenses used by Worcester Brothers in calculating its damages.  At trial, the Authority did not object to the introduction of the accounting records on this ground.  Accordingly, that issue is not before us.  Rule 5:25.  We also reject the Authority's contention that the contract provision for a 15% mark-up for "changes in the work" should be applied to field office damages to determine a liquidated award of home office expenses.  Assuming that this argument can be subsumed within the assignment of error, we are not persuaded that the 15% mark-up applies to an award of damages for delay.

[5]To make that proration, the total amount billed on the particular contract by the contractor ($B_c$) is divided by the

10

court was not whether, in the absence of an express term, the parties contemplated using the Eichleay formula, or any other method of calculating unabsorbed overhead damages, but whether the resulting quantum was "an intelligent and probable estimate" of the actual damages. Pebble, 223 Va. at 191, 228 S.E.2d at 438.

As an abstract proposition, the Eichleay formula has been criticized as an inadequate substitute for direct evidence of the actual amount of damages and "no less speculative" than other unsupported opinion evidence simply "because it was cast in a mathematical milieu." Berley Indus., Inc. v. City of New York, 385 N.E.2d 281, 283 (N.Y. 1978). In Berley, the New York

---

contractor's total billings during the contract period ($B_t$) and this quotient is then multiplied by the contractor's home office expenses attributable to the contract period ($H_t$) to determine the amount of home office expenses allocable to the contract. Next, the amount of home office expenses allocable to the contract is divided by the total number of days of the contractor's performance under the contract ($D_t$) to determine a daily contract home office expense rate. Finally, the daily contract home office expense rate is multiplied by the number of days of delay ($D_d$) to determine the amount of damages (A). See Capital Electric, 729 F.2d at 747. This method of proration is the Eichleay formula in its most basic application, and may be stated mathematically in this way:

$$\frac{\dfrac{B_c}{B_t} \times H_t}{D_t} \times D_d = A$$

Court of Appeals rejected the use of the Eichleay formula as an "administrative convenience," where there was no supporting evidence that any of the home office expenses were attributable to the delay.  Id.

Distinguishing Berley, the Florida District Court of Appeals held that use of the Eichleay formula for calculating unabsorbed home office expenses attributable to a delay is proper so long as there is competent evidence of actual damage having been sustained by the party seeking relief.  Broward County v. Russell, Inc., 589 So.2d 983, 984 (Fla. Dist. Ct. App. 1991).  Similarly, other jurisdictions have held that where there is sufficient proof that the plaintiff has suffered damages as a result of the delay, the Eichleay formula affords a reasonable basis for estimating the amount of those damages with respect to unabsorbed home office expenses.  See, e.g., Conti Corp. v. Ohio Dept. of Admin. Serv's, 629 N.E.2d 1073, 1077 (Ohio Ct. App. 1993); Golf Landscaping, Inc. v. Century Const. Co., 696 P.2d 590, 593 (Wash. Ct. App. 1984).

We are of opinion that the rationale of the latter cases is in accord with the general principles of law applicable to proving damages for delay as outlined in the duPont and Pebble, cases.  Accordingly, where, as here, there is evidence that a contractor has suffered actual damages as a result of an unreasonable owner-caused delay, the Eichleay formula is an

acceptable method, though not the only possible method, of calculating the portion of home office expenses attributable to delay. Cf. Southern New England Contracting Co. v. State, 345 A.2d. 550, 559-60 (Conn. 1974); PDM Plumbing & Heating, Inc. v. Findlen, 431 N.E.2d 594, 595 (Mass. Ct. App. 1982).

In recognizing the adequacy of the evidence in this case to support the use of the Eichleay formula to determine unabsorbed overhead damages for the delay in this contract, we do not adopt it as the standard for determining such damages generally. Rather, as with any fact-specific question, the individual circumstances of a given case will determine whether "an intelligent and probable estimate" of such damages has been proven. Pebble, 223 Va. at 191, 228 S.E.2d at 438.

## CONCLUSION

For the reasons stated above, we will affirm the judgment of the trial court.

Affirmed.