[This decision has been published in *Ohio Official Reports* at 94 Ohio St.3d 54.]

COMPLETE GENERAL CONSTRUCTION COMPANY, APPELLEE AND CROSS-APPELLANT, *v.* OHIO DEPARTMENT OF TRANSPORTATION, APPELLANT AND CROSS-APPELLEE.

[Cite as *Complete Gen. Constr. Co. v. Ohio Dept. of Transp.*, 2002-Ohio-59.]

*Public construction — Modified Eichleay formula is one way of determining unabsorbed home office overhead damages in public construction delay cases — Courts applying modified Eichleay formula must allow owners opportunity to dispute particular items contractor submits in an overall overhead cost presentation.*

(No. 00-1267—Submitted May 16, 2001—Decided January 16, 2002.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Franklin County, No. 98AP-1619.

————————

SYLLABUS OF THE COURT

The *Eichleay* formula, modified for use in Ohio courts, is one way of determining unabsorbed home office overhead damages in public construction delay cases. Courts applying the formula must allow owners the opportunity to dispute particular items a contractor submits in an overall overhead cost presentation.

————————

PFEIFER, J.

{¶ 1} This case evolved out of a contractor's claim for additional costs on a highway construction project as a result of delays caused by the Ohio Department of Transportation ("ODOT"). The bulk of this case concerns the method of calculating unabsorbed home office overhead—the cost of running a contractor's home office during the delay period—and whether Ohio should adopt the "*Eichleay*

formula," an equation employed by federal courts in determining such costs. The formula acquired its name from the Armed Services Board of Contract Appeals decision in *Eichleay Corp.* (1960), ASBCA No. 5183, 60-2 BCA ¶ 2688, 1960 WL 538, and "is the most well-known formula for calculating unabsorbed overhead" costs arising out of government-caused delay. Shapiro & Worthington, Use of the *Eichleay* Formula to Calculate Unabsorbed Overhead for Government Caused Delay Under Manufacturing Contracts (1996), 25 Pub.Contr.L.J. 513, 514. We hold that Ohio courts may use the *Eichleay* formula, with certain important modifications, in calculating such costs. We do not find that the *Eichleay* formula is the exclusive manner of determining unabsorbed home office overhead.

*Factual Background*

{¶ 2} This action arises out of the construction of a stretch of I-670 from just north of downtown Columbus to Port Columbus International Airport. Construction of that portion of I-670 was broken into five sections, with each section being bid as a separate project. Appellee and cross-appellant, Complete General Construction Company ("Complete General"), successfully bid on four of those five projects. One of those four, Project 56-91 ("the Project"), is the focus of this action.

{¶ 3} The Project provided for the construction of I-670 from the Greater Columbus Convention Center to a point just west of I-71. The contract called for the construction of that stretch of highway, including the erection of three new bridges and the widening of another. Work on the Project began on March 15, 1991, with a slated completion date of August 31, 1992.

{¶ 4} However, early on in the Project, design errors relating to the bridges and attributable to ODOT caused a seven-month delay. Due to the delay, on May 13, 1992, ODOT granted Complete General a twelve-month work extension, moving the completion date to August 31, 1993. While the actual delay was seven months, an extension to March 31, 1993, automatically triggered an additional five-

2

month extension under the contract because the March date fell within the winter shutdown period.

{¶ 5} Later, ODOT granted Complete General an additional sixty-day extension for other work not contemplated by the original contract, moving the completion date to October 31, 1993.

{¶ 6} Following the completion of the Project, the parties entered into negotiations to compensate Complete General for costs it incurred as a result of the extension of the completion date. On October 31, 1996, they agreed that ODOT would pay Complete General $177,662.47 as final compensation for all costs related to the contract extensions, except "home office overhead, interest, major equipment costs, and bond costs." The settlement was a part of Change Order 39. The parties continued negotiating on the unresolved issues.

{¶ 7} On January 7, 1997, Complete General sued ODOT to recover unabsorbed home office overhead, idle equipment costs, extended equipment costs, and additional bond costs, as well as interest on all these costs from the time of completion of the Project. ODOT offered to pay Complete General $196,410.34: $182,500 for unabsorbed overhead, $888.31 for bond costs, and $13,022.03 for interest. Complete General accepted the amount as partial payment for the disputed claims, and continued on with its lawsuit. This partial settlement was memorialized in Change Order 40.

{¶ 8} The parties tried the case before the Court of Claims beginning on April 13, 1998. On November 18, 1998, the court awarded Complete General $374,231.08. The award broke down as follows: $184,947 for unabsorbed home office overhead, $62,622.50 for idle equipment costs, $115,171.49 in interest on the overhead and idle equipment awards, and $11,490.09 in additional bond costs. The court found for ODOT on Complete General's claim for extended equipment costs, *i.e.*, costs for additional equipment time required beyond that originally allocated in Complete General's bid.

**{¶ 9}** Both parties appealed the decision of the Court of Claims. In its decision, the Franklin County Court of Appeals affirmed the judgment of the Court of Claims in part, reversed it in part, and remanded the cause for further proceedings.

**{¶ 10}** The cause is before this court upon the allowance of a discretionary appeal and cross-appeal.

*Law and Analysis*

**{¶ 11}** Both parties appeal aspects of the court of appeals' decision. We resolve those issues below.

Unabsorbed Home Office Overhead

**{¶ 12}** ODOT appeals this part of Complete General's award based upon the lower courts' reliance on the *Eichleay* formula for the calculation of home office overhead during the delay period.

**{¶ 13}** Bids on construction projects incorporate two different kinds of costs. The first type, direct costs, include construction wages and equipment expenses and are attributed to specific projects. The second type, indirect costs, are the expenses involved in generally running a business, not attributable to any one project. The most significant indirect cost is home office overhead. Such costs typically include salaries of executive or administrative personnel, general insurance, rent, utilities, telephone, depreciation, professional fees, legal and accounting expenses, advertising, and interest on loans. See *Interstate Gen. Govt. Contrs., Inc. v. West* (Fed.Cir.1993), 12 F.3d 1053, 1058.

**{¶ 14}** Each project a contractor undertakes derives benefits from the home office, and each contributes to paying for home office overhead. Contractors typically do not apportion overhead costs among individual projects. Each project in some degree is responsible for the contractor's costs of simply doing business, and each project plays its proportionate part in paying those costs. When a delay occurs on a particular construction project, that particular project ceases to carry its

weight in regard to running the business, which can result in damages to the contractor. See Kauffman & Holman, The *Eichleay* Formula: A Resilient Means for Recovering Unabsorbed Overhead (1995), 24 Pub.Contr.L.J. 319, 320-321.

**{¶ 15}** Assigning a value to a delayed project's effect on home office overhead can be difficult. Calculating overhead costs allocable to a delay on a given project is generally achieved through the employment of a mathematical formula. The most prominent of those formulas, especially in the federal government context, is the *Eichleay* formula. See Golden & Thomas, The *Spearin* Doctrine: The False Dichotomy Between Design and Performance Specifications (1995), 25 Pub.Contr.L.J. 47, 66-67.

**{¶ 16}** The *Eichleay* formula " 'seeks to equitably determine allocation of unabsorbed [home office] overhead to allow fair compensation of a contractor for government delay.' " *Satellite Elec. Co. v. Dalton* (Fed.Cir.1997), 105 F.3d 1418, 1421, quoting *Wickham Contracting Co., Inc. v. Fischer* (Fed.Cir.1994), 12 F.3d 1574, 1578. The formula was developed in the federal court system, beginning in 1960 with *Eichleay Corp.*, *supra*, ASBCA No. 5183, 60-2 CBA ¶ 2688, and has been adopted by the Federal Circuit Court of Appeals as the prevailing method for calculating home office overhead expenses attributable to owner-caused delay on federal contracts. *Wickham*, 12 F.3d at 1579-1581.

**{¶ 17}** The *Eichleay* formula creates a *per diem* rate for overhead costs attributable to a single project, multiplying that rate by the number of days of delay to arrive at a total home office overhead award. *Wickham*, 12 F.3d at 1577, fn. 3. The formula is calculated as follows:

1. (Total billings for the contract at issue ÷ Total billings from all contracts during the original contract period) x (Total overhead during the original contract period) = Overhead Allocable to the Contract.

2. (Overhead Allocable to the Contract) ÷ (Original planned length of the contract in days) = Daily Contract Overhead Rate.

3. (Daily Contract Overhead Rate) x (Compensable period in days) = Unabsorbed Overhead Damages. See *West v. All State Boiler, Inc.* (Fed.Cir.1998), 146 F.3d 1368, 1379, fn. 4.

{¶ 18} The above is simply the mathematics of the *Eichleay* formula—an owner-caused delay in construction does not necessarily lead to an award of damages for home office overhead. Indeed, "recovery under the *Eichleay* formula is an extraordinary remedy designed to compensate a contractor for unabsorbed overhead costs that accrue when contract completion requires more time than originally anticipated because of government-caused delay." *All State Boiler*, 146 F.3d at 1377.

{¶ 19} Before the *Eichleay* formula may be applied, the contractor must demonstrate two important elements in order to establish a prima facie case for the award of damages. First, the contractor must demonstrate that it was on "standby." *Interstate Gen. Govt. Contractors*, 12 F.3d at 1056. A contractor is on standby "when work on a project is suspended for a period of uncertain duration and the contractor can at any time be required to return to work immediately." *All State Boiler*, 146 F.3d at 1373. In effect, the contractor is not working on the project, yet remains bound to the project. The contractor must be ready to immediately resume performance at any time.

{¶ 20} The second element in a prima facie case is that the contractor must prove that it was unable to take on other work while on standby. *Id*. That is, the contractor must show that the uncertainty of the duration of the delay made it unable to commit to replacement work on another project. Impracticability, rather than impossibility, of other work is the standard, and the contractor is entitled to damages " '*only* if its inability to take on additional work results from its standby status, *i.e*., is attributable to the government.' " (Emphasis *sic.*) *Id.*, 146 F.3d at 1375, quoting *Satellite Elec. Co.*, 105 F.3d at 1421.

{¶ 21} In establishing a prima facie case, then, a contractor demonstrates that it has committed a portion of its overhead costs to a particular project and that not only has the project's suspension left those costs unabsorbed, but that the character of the government-caused delay is such that it is impractical for the contractor to obtain other work to fill the gap. Once the contractor commits resources to a project the resources remain committed whether the project moves forward or not. The contractor is all geared up with nowhere to go.

{¶ 22} That problem results in damages once the original contract period runs out and the extension period begins. At that point the contractor begins expending home office overhead on the project beyond what the contract had contemplated. It is important to note that a contractor may recover under *Eichleay* only if the suspension of the project results in the extension of the completion date. If the suspension does not affect the completion date, the contractor cannot claim damages because he has not suffered any injury, *i.e.*, he spent the time he had originally allocated on the project. *All State Boiler*, 146 F.3d at 1379. Thus, as the court holds in *All State Boiler*, damages are measured based on the number of days the contractor continues to expend home office overhead on the project beyond what was allocated:

{¶ 23} "Once the contract performance period extends beyond the initial deadline, indirect costs continue to accrue but the contractor has neither allocated them to the newly-extended contract nor is able to begin a new contract to absorb the next portion of these continuing costs. * * * The ordinary course of the contractor's business is thus interrupted by the suspension; where normally the contractor would begin the next contract, to which a new portion of its indirect costs would be attributable, it is forced to extend performance on the old, suspended contract, while additional indirect costs accrue with no additional revenue to support them." *All State Boiler*, 146 F.3d at 1379.

**{¶ 24}** The government can rebut the contractor's prima facie case for unabsorbed overhead damages by demonstrating either "(1) that it was not impractical for the contractor to obtain 'replacement work' during the delay, or (2) that the contractor's inability to obtain such work, or to perform it, was not caused by the government's suspension." *Melka Marine, Inc. v. United States* (Fed.Cir.1999), 187 F.3d 1370, 1375.

**{¶ 25}** ODOT argues that the *Eichleay* formula allows contractors to recover for breach of contract without establishing causation. To the contrary, we find that before the formula can be applied, a contractor must prove a rather extraordinary set of circumstances that by their very nature demonstrate causation and damages.

**{¶ 26}** The *Eichleay* formula goes nowhere without causation. A contractor may recover only if there is an *owner-caused* construction delay. Moreover, the "standby" character of the delay must also be caused by the owner, and must prevent the contractor from finding replacement projects to cover the overhead.

**{¶ 27}** The fact that a delay that creates an uncertain extension period causes damages for a contractor is axiomatic. The outlay of overhead on a delayed project increases as the time allotted for the project is extended. *Eichleay* starts with the proposition that all of a contractor's projects share in a contractor's home office overhead. It only follows that the suspension of a particular project creates a gap in the coverage of overhead costs. The fact that damages are caused by an owner's breach is self-evident—the very nature of the formula requires that overhead costs are not replaced by another job.

**{¶ 28}** Finally, as with any other contract claim, the contractor also has the duty to mitigate damages. Central to *Eichleay* is the requirement that, if able, the contractor must take on other work to absorb the overhead allotted to the delayed project.

**{¶ 29}** Thus, *Eichleay* does no violence to contract law. However, we agree with ODOT that differences between federal and Ohio public contracting law allow contractors to recover inappropriate costs when the *Eichleay* formula is applied in Ohio. Comparing federal and Ohio highway contracting systems is like comparing apples and orange barrels. The federal government has adopted the Federal Acquisition Regulations ("FARs"), which set forth "uniform policies and procedures for acquisition by all executive agencies." Section 1.101, Title 48, C.F.R. Section 31.205-1 *et seq.* governs which costs are allowable and which are not. FAR prohibitions include interest on borrowings, *id*. at Section 31.205-20, entertainment expenses, Section 31.205-14, contributions and/or donations, Section 31.205-8, bid and proposal costs, 31.205-18, and bad debts, 31.205-3. See, generally, Section 31.205-1 *et seq*., Title 48, C.F.R. Therefore, those types of costs go uncompensated in federal cases applying the *Eichleay* formula.

**{¶ 30}** In general, these unrecognized costs are of the variety that do not bestow any benefit on the government owner in regard to the project at issue. The idea that the government should fund a contractor's parties, sports tickets, political contributions, or other expenses that bring nothing tangible to the government's project is unreasonable. Under the federal system, such costs are not included in recoverable overhead costs and should not be recoverable in an Ohio case applying the *Eichleay* formula.

**{¶ 31}** Thus, we modify the use of the *Eichleay* formula in Ohio. Courts applying the formula must allow owners the opportunity to dispute particular items a contractor submits in an overall overhead cost presentation. Government agencies would do well to consider the FAR's dissection of allowable and unallowable indirect costs, Sections 31.205-1 through 31.205-52, Title 48, C.F.R., for guidance.

**{¶ 32}** We find today that the *Eichleay* formula is *one* way of determining unabsorbed home office overhead damages in public construction delay cases.

Once it is determined that an owner-caused delay has caused a contractor to suffer unabsorbed overhead costs, then the *Eichleay* formula can be employed, but not necessarily exclusively. For instance, a court could utilize the direct cost formula. The direct cost method compares the direct costs actually attributed to a project as a portion of all of the direct costs incurred by the business over a particular period. The result is a ratio by which the percentage of indirect costs can be calculated, including home office overhead applicable to a particular project. *Royal Elec. Constr. Co. v. Ohio State Univ.* (Dec. 21, 1993), Franklin App. Nos. 93AP-399 and 93AP-424, unreported, 1993 WL 532013, at *6, reversed on other grounds (1995), 73 Ohio St.3d 110, 652 N.E.2d 687.

**{¶ 33}** We find that the trial court acted within its discretion in applying the *Eichleay* formula in this case, and we defer to the trial court's finding that Complete General did suffer unabsorbed home office overhead as a result of ODOT's delay on the project at issue. We find that the court correctly measured Complete General's damages stemming from the extension period. However, the court erred in applying the *Eichleay* formula without allowing ODOT to dispute items of overhead that did not bestow any benefit to the project at issue. Accordingly, we affirm the judgment of the court of appeals in part, reverse it in part, and remand the matter to the trial court for a determination of damages that makes specific findings regarding specific items of overhead disputed by ODOT.

Idle Machinery Costs

**{¶ 34}** Complete General also sought to recover direct costs of the owner-caused delay on this project. One of these was the cost of idle equipment. That idle equipment costs were compensable is not at issue—the contract between the parties allows for such recovery on account of a delay caused by ODOT. (Construction and Materials Specification 108.031, Suspension of Work or Termination of Contract.). Payment for idle equipment "may be allowed only for

machinery or equipment actually on the project site required for those phases of the construction work to which such order applies."

{¶ 35} Whether Complete General's equipment remained on the job site because of ODOT's delay was a question of fact, and such matters are best left to the trier of fact. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273. Here, the court of appeals went beyond its role of determining whether the decision of the trial court was supported by "some competent, credible evidence going to all the essential elements of the case." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. Instead, the court below rejected the trial court's characterization of Complete General's witness's testimony on this issue and inserted its own. We find that the appellate court so erred. We thus reverse the judgment of the appellate court and reinstate the trial court's judgment on idle equipment costs.

Extended Equipment Costs

{¶ 36} In addition to its idle equipment costs, Complete General sought extended equipment costs, *i.e.*, compensation for the additional equipment time required to complete the work beyond that which Complete General originally allocated in its bid. Neither the trial court nor the appellate court found evidence entitling Complete General to that type of damages. Both found that Complete General had already been compensated for extended equipment costs. The trial court went further and considered whether Complete General should also recover for lost opportunity costs due to its inability to use the equipment on other jobs. Applying a greater standard of proof to that determination, pursuant to *Gahanna v. Eastgate Properties, Inc.* (1988), 36 Ohio St.3d 65, 68, 521 N.E.2d 814, 817-818, the court awarded no further damages.

{¶ 37} Complete General argues that the trial court assigned the incorrect standard of proof to its claim for extended equipment costs. We find that the trial

court applied that standard only to the aspect of Complete General's claim that could be characterized as a claim for lost profits. As to Complete General's claim for the use of its equipment, the trial court applied the appropriate standard.

{¶ 38} Accordingly, we affirm the judgment of the court of appeals on this issue.

Interest

{¶ 39} Complete General also asserts that the appellate court erred in recalculating the amount of prejudgment interest owed by ODOT. We find that Complete General's contention on that issue has merit.

{¶ 40} Pursuant to R.C. 2743.18(A)(1), Complete General was entitled to prejudgment interest on all damages determined by the Court of Claims from the time of the accrual of the claim, *i.e.*, the time that Complete General had substantially completed its work on the project. *Royal Elec. Constr. Corp.*, 73 Ohio St.3d 110, 652 N.E.2d 687. The statutory rate on a contract claim is ten percent per annum. R.C. 1343.03(A).

{¶ 41} The Court of Claims made the factual determination that Complete General had substantially completed the work on Contract 56 on September 14, 1993. The court then awarded Complete General prejudgment interest on its net unabsorbed overhead award and idle equipment award from that date through the date of the court's judgment entry, less the interest paid pursuant to Change Order 40. It did not award Complete General prejudgment interest on its direct costs that were a part of the negotiated settlement documented in Change Order 39.

{¶ 42} The appellate court agreed with the trial court on that issue, based upon its reading of Change Order 39. The court held that "the change order was intended to constitute a final settlement of all matters except home office overhead, major equipment costs, and bond costs, as well as interest on any amounts found to be owing with respect to these matters."

{¶ 43} However, the change order in question does not read that way. In Change Order 39, ODOT agreed to pay Complete General $177,662.47 as compensation for all costs incurred due to two contract extensions, except "home office overhead, *interest*, extended major equipment costs, and bond costs." (Emphasis added.) The word "interest" is not qualified in any way in the agreement—it is not limited to interest on the remaining disputed items. Thus, we can only interpret "interest" to mean interest on the entire amount, not just interest on the unsettled items. Since interest is measured from the date of substantial completion, it may well be that the parties could not agree on what date Complete General substantially completed its work, and that interest itself was an unsettled issue. We find that the trial court and appellate court erred in treating interest as an issue settled under Change Order 39. We find that interest on the direct costs was still at issue between the parties up to the execution of that change order. Thus we remand the issue to the trial court for a determination of interest owed on direct costs from the date of substantial completion until the date of Change Order 39.

{¶ 44} ODOT also owes Complete General prejudgment interest on its unabsorbed overhead award and idle equipment award from the date of substantial completion through the date the matter is settled upon remand. Subtracted from that amount should be the amount of interest paid pursuant to Change Order 40. Further, the determination of prejudgment interest on the unabsorbed overhead claim should reflect that partial payment on that claim was made pursuant to Change Order 40. Thus, interest should be determined on the entire unabsorbed overhead award from the completion date only until Change Order 40. Additional interest should be charged on the portion of the unabsorbed overhead award exceeding the amount paid under Change Order 40, calculated from the date of Change Order 40 until the date the matter is settled upon remand.

Conclusion

**{¶ 45}** Accordingly, we reverse the judgment of the appellate court on the issue of home office overhead, idle equipment costs, and interest, and affirm the appellate court's judgment on the issue of extended equipment costs. We remand the cause to the trial court for a determination consistent with this opinion.

*Judgment affirmed in part,*

*reversed in part*

*and cause remanded.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY and LUNDBERG STRATTON, JJ., concur.

COOK, J., concurs in part and dissents in part.

_____

**COOK, J., concurring in part and dissenting in part.**

**{¶ 46}** I agree with today's majority that courts and litigants may employ the formula articulated in *Eichleay Corp.* (1960), ASBCA No. 5183, 60-2 BCA ¶ 2688, 1960 WL 538, when calculating a contractor's unabsorbed home office overhead damages. I also agree that the *Eichleay* formula, while acceptable, is not the *only* possible method of calculating such damages. See *Fairfax Cty. Redevelopment & Hous. Auth. v. Worcester Bros. Co., Inc.* (1999), 257 Va. 382, 390, 514 S.E.2d 147, 152. Today's decision does not foreclose either plaintiff contractors or defendant government agencies from presenting alternate formulas that may, in certain situations, more accurately measure unabsorbed home office overhead. See Love, Theoretical Delay and Overhead Damages (2000), 30 Pub.Contr.L.J. 33, 51-62 (positing numerous hypotheticals in which the *Eichleay* formula does not accurately assess unabsorbed overhead damages); Darbyshire, Home Office Overhead as Damages for Construction Delays (1983), 17 Ga.L.Rev. 761, 793-794, 799-805 (theorizing that the *Eichleay* formula could actually underestimate the contractor's actual loss under certain circumstances).

{¶ **47**} I write separately to emphasize that the *Eichleay* formula does not relieve a contractor of its burden of proving that it is entitled to recover unabsorbed home office damages. The *Eichleay* formula merely supplies a mathematical method of calculating those damages when the contractor has proven the fact of having suffered them. *George Hyman Constr. Co. v. Washington Metro. Area Transit Auth.* (C.A.D.C.1987), 816 F.2d 753, 756-757. As the court of appeals correctly noted in its opinion below, "before a contractor impacted by a construction delay can utilize *Eichleay*, or any other formula, to calculate its damages for unabsorbed home office overhead, the contractor must establish that the delay caused some portion of its home office overhead to be unabsorbed," citing *Royal Elec. Constr. Co. v. Ohio State Univ.* (Dec. 21, 1993), Franklin App. Nos. 93AP-339 and 93AP-424, unreported, 1993 WL 532013, reversed on other grounds (1995), 73 Ohio St.3d 110, 652 N.E.2d 687. See, also, *Worcester Bros. Co.*, 257 Va. at 390, 514 S.E.2d at 152; *Broward Cty. v. Russell, Inc.* (Fla.App.1991), 589 So.2d 983, 984. Absent some competent evidence of a contractor's having suffered actual damage in the form of unabsorbed home office overhead, the contractor will not be entitled to recovery, regardless of what number the *Eichleay* formula may yield.

{¶ **48**} As a method of establishing actual damage, the majority opinion endorses the framework that federal courts have employed in determining whether a contractor has established an entitlement to *Eichleay* recovery. That is, the contractor must show a prima facie case for unabsorbed overhead damages by demonstrating that (1) it was on "standby" during a government-caused delay and (2) it was unable to take on other work while on standby. See *West v. All State Boiler, Inc.* (Fed.Cir.1998), 146 F.3d 1368, 1373 (identifying the two prerequisites to application of *Eichleay*). The government then bears the burden to present rebuttal evidence or argument showing that the contractor did not suffer or should not have suffered any loss because it was able either to reduce its overhead or take

on replacement work during the delay. See *Satellite Elec. Co. v. Dalton* (Fed.Cir.1997), 105 F.3d 1418, 1421.

{¶ 49} It is important to note that the framework endorsed by the federal courts and by today's majority does *not* relieve the contractor of its burden of proof. The government's burden is one of production only—the contractor bears the ultimate burden of proving that it was impractical to obtain sufficient replacement work to absorb overhead expenses originally allocated to the delayed contract. *Melka Marine, Inc. v. United States* (Fed.Cir.1999), 187 F.3d 1370, 1376. Thus, nothing in the burden-shifting framework changes the fact that it is the contractor who bears the risk of nonpersuasion on *all* of the prerequisite elements to *Eichleay* relief. "Entitlement to *Eichleay* damages turns on whether *the contractor can establish*: (1) government-caused delay; (2) that it was on 'standby'; and (3) that it was unable to take on other work." (Emphasis added.) *Altmayer v. Johnson* (Fed.Cir.1996), 79 F.3d 1129, 1133.

{¶ 50} It is true that the analysis endorsed today takes as given the proposition that a contractor allocates indirect costs on a proportionate basis among all of its contracts. Indeed, the federal courts have taken this approach, accepting this premise as a basic truth of the bidding process on government contracts. See, *e.g.*, *All State Boiler*, 146 F.3d at 1372; *Mech-Con Corp. v. West* (Fed.Cir.1995), 61 F.3d 883, 886. Nothing in today's decision, however, forecloses the government from rebutting this premise with evidence that the contractor has not, in fact, allocated indirect costs to the contract at issue in the manner presupposed by the *Eichleay* formula.

{¶ 51} With the foregoing observations, I agree with the majority's decision to reverse and remand for a reapplication of the *Eichleay* formula. With respect to Complete General's cross-appeal, I agree with the majority that the court of appeals erred in denying Complete General recovery of prejudgment interest. I would, however, affirm the judgment of the court of appeals in all other respects.

_____

*Michael W. Currie* and *Daniel F. Edwards*, for appellee and cross-appellant.

*Betty D. Montgomery*, Attorney General, *William C. Becker, Jon C. Walden* and *Karhlton F. Moore*, Assistant Attorneys General, for appellant and cross-appellee.

*Barry M. Byron*, *Stephen L. Byron* and *John Gotherman*, urging reversal for *amicus curiae* Ohio Municipal League.

*Means, Bichimer, Burkholder & Baker Co., L.P.A.*, and *Katherine Francis Dolan*, urging reversal in part for *amicus curiae* Ohio School Boards Association.

_____