COURT OF APPEALS OF VIRGINIA

Present:   Judges Clements, Kelsey and Senior Judge Annunziata
Argued at Alexandria, Virginia

RASHIDA CLAYTON

MEMORANDUM OPINION[*] BY
v.        Record No. 2819-07-4                    JUDGE D. ARTHUR KELSEY
JULY 22, 2008
ALEXANDRIA DEPARTMENT OF
  HUMAN SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Lisa B. Kemler, Judge

Dale Warren Dover for appellant.

Jonathan Westreich (Ignacio Pessoa; Jill A. Schaub; Mary
O'Donnell; Office of the City Attorney, on brief), for
appellee.

Stephen Saunders, Guardian *ad litem* for the minor child.


Rashida Clayton appeals the circuit court's final order terminating her parental rights

over her infant daughter.  Clayton does not contest the sufficiency of the evidence supporting the

termination decision.  Instead, she argues that the circuit court should have dismissed the petition

for termination filed by the Alexandria Department of Human Services (DHS) because a student

intern rather than a social worker signed the petition.  Clayton also asserts that DHS violated her

due process rights during a family group conference.  Finding no merit in either assertion, we

affirm the circuit court's termination order.

I.

In an appeal of a termination proceeding, we review the evidence "in the 'light most

favorable' to the prevailing party in the circuit court and grant to that party the benefit of 'all

reasonable inferences fairly deducible therefrom.'"  Toms v. Hanover Dep't of Soc. Servs., 46

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Va. App. 257, 262, 616 S.E.2d 765, 767 (2005).  We also limit our factual review to that portion of the evidentiary record "relevant to the issues presented in this appeal."  Raytheon Technical Servs. Co. v. Hyland, 273 Va. 292, 296, 641 S.E.2d 84, 86 (2007).[1]

At the time of the termination proceeding, Clayton was eighteen years old.  She suffers from mental retardation limiting her to the cognitive capacity of an eight year old.  She gave birth to a daughter in 2006.  Six months later the child was discovered to have a skull fracture, fractures of the left femur and left tibia, and five rib fractures.  Some of the injuries were fresh; others were older injuries in various stages of healing.  Clayton's boyfriend was convicted of assaulting the child.  Pursuant to an emergency removal order, DHS took the child from Clayton due to her inability to protect the child from harm and to her failure to obtain medical attention for the child's injuries.

In 2007, DHS arranged a family group conference to encourage the extended family to become involved.  Twenty-seven of Clayton's family members — including her mother, aunts, brothers, sisters, and cousins — attended the conference.  They agreed among themselves that one of Clayton's aunts should adopt the child.  DHS recorded their consensus but made "no promises" that either of the aunts would be approved for adoption.

DHS later filed a termination petition in the juvenile and domestic relations district court.  A DHS student intern filled in the information on the preprinted form petition and presented it for review by the supervising social worker.  After the supervisor approved the petition, the intern signed the petition on behalf of DHS and filed it with the JDR district court.  When Clayton's counsel questioned the intern's authority to sign the petition, the JDR district court

---

[1] See generally Fairfax County Redev. v. Worcester Bros., 257 Va. 382, 384, 514 S.E.2d 147, 148 (1999) ("Under well established principles, we recount only those facts relevant to our resolution of the appeal."); Taylor v. Taylor, 27 Va. App. 209, 212, 497 S.E.2d 916, 917 (1998) ("We recite only those facts relevant to the issues properly before us on appeal.").

inquired into the matter and inserted next to the intern's name on the petition "Agent for City of Alex. DHS." The JDR district court heard evidence on the petition and issued a termination order.

Clayton sought *de novo* review in the circuit court. Among her arguments was the assertion that the termination petition should be dismissed because only a DHS social worker (not a DHS student intern) has authority to sign the petition. The circuit court took evidence on the issue, which included testimony from the intern. She testified that the petition had been reviewed and approved by the supervising social worker prior to filing. The intern signed the petition, she said, as an authorized agent of DHS. Based upon this evidence, coupled with the JDR district court's amendment to the petition signature line, the circuit court denied Clayton's motion to dismiss.

Clayton also argued that DHS violated her constitutional due process rights by not affording her legal counsel during the family group conference, by not advising her that her statements could later be used against her in a termination proceeding, and by not following through with the purported agreement to allow one of Clayton's family members to adopt the child.

The circuit court rejected each prong of Clayton's due process argument. As to the first, the court held that DHS had no constitutional duty to provide legal counsel to Clayton during a family group conference. As to the second, the court held no legal authority supports Clayton's assertion that Miranda-like warnings are required in a voluntary family meeting prior to a civil termination proceeding. Finally, the court found no evidence of an agreement requiring DHS, following termination of Clayton's parental rights, to consent to an adoption by one of Clayton's family members. No such agreement would be enforceable in any event, the court added.

The circuit court then addressed the evidentiary merits of the termination petition and held that clear and convincing evidence required the termination of Clayton's parental rights.

## II.

Clayton's appeal presents two questions. First, did the circuit court err by not dismissing the termination petition signed by the DHS student intern? And, second, did DHS violate Clayton's due process rights during the family group counseling? We answer no to both.

### (A) DISMISSAL OF THE TERMINATION PETITION

Code § 16.1-283 "does not specify who may file a termination petition." Stanley v. Dep't of Soc. Servs., 10 Va. App. 596, 602, 395 S.E.2d 199, 202 (1990) (recognizing the authority of a guardian *ad litem* to file a petition), aff'd, 242 Va. 60, 405 S.E.2d 621 (1991). It is almost always filed by the local child services agency supervising the case.[2] And just as there exists "no provision in Code § 16.1-283 restricting who may file a termination petition," id., no statutory provision restricts who may sign on behalf of the local child services agency.

Clayton argues that, as a matter of law, only a licensed social worker may sign a termination petition on behalf of DHS. We reject this assertion as unsupported either by statute or caselaw. Instead, the issue should be resolved just as the circuit court resolved it: In cases where actual authority of the signor is contested, the court should take evidence to determine whether the individual signing the petition did so with the express authority of DHS. The evidence in this case established that the DHS intern signed the petition on behalf of DHS after a supervising social worker reviewed and approved the petition. The intern testified that she did

---

[2] This is so because "Code § 16.1-283 . . . directly limit[s] the right to initiate a termination petition by also requiring the filing of a foster care plan submitted in conformance with Code § 16.1-281, documenting termination as being in the best interests of the child." Stanley, 10 Va. App. at 603, 395 S.E.2d at 202. "The foster care plan documenting the need for termination can only be filed by the local board of public welfare or social services or the child welfare agency that has been given custody of the child." Id. at 602, 395 S.E.2d at 202.

not make the decision to petition for termination of appellant's parental rights but filed the petition under the direction of her DHS supervisor. The circuit court accepted this testimony, as did the JDR district court when it amended the petition to identify the intern as an "agent" for DHS.[3] The circuit court, therefore, did not err in denying Clayton's motion to dismiss.

### (B) CLAYTON'S DUE PROCESS RIGHTS

The evidence showed that DHS arranges family group conferences in an effort to encourage input and support from the child's immediate and extended family. It is not a criminal interrogation implicating the constitutional right to counsel. Nor is it a custodial event requiring DHS to provide <u>Miranda</u>-like warnings to parents who may later be subject to a termination proceeding. It is a wholly voluntary event meant to tap the collective wisdom of the family on what it thinks would be the best outcome for the child. No fair characterization of the family group conference supports Clayton's analogy to a criminal suspect's right to counsel or to a police officer's duty to warn a suspect of his right to remain silent.[4]

We find similarly unpersuasive Clayton's argument that due process principles required DHS to abide by the family's agreement to place the child up for adoption by one of Clayton's aunts. Absent statutory authorization, courts do not enforce purely private contracts purporting to determine child custody, adoptions, or parental rights. Such matters are not the proper "subject of barter" among contracting parties. <u>Buchanan v. Buchanan</u>, 170 Va. 458, 477, 197 S.E. 426, 434 (1938); <u>see</u> <u>generally</u> <u>Ford v. Ford</u>, 371 U.S. 187, 193 (1962) ("In Virginia, the parents cannot make agreements which will bind courts to decide a custody case one way or the other."); <u>Verrocchio v. Verrocchio</u>, 16 Va. App. 314, 317, 429 S.E.2d 482, 484 (1993). It

---

[3] The JDR district court had ample discretion to do so. <u>See</u> Rule 8:8(c) ("Leave to amend a pleading shall be liberally granted in furtherance of the ends of justice.").

[4] In any event, the evidentiary record contains no evidence of statements made by Clayton during the family group conference. Even if this case involved a criminal suppression hearing, Clayton has not sought to suppress any evidence.

- 5 -

necessarily follows that Clayton could not have a constitutional due process right to enforce a legally unenforceable contract — particularly where, as here, DHS made clear to Clayton and her family that "no promises" could be made that either DHS or the court would approve their proposed solution.[5]

III.

Concluding that neither of Clayton's arguments on appeal has merit, we affirm the circuit court's termination order.

Affirmed.

---

[5] To effectuate the family's proposed adoption plan, of course, it would still be necessary for the court to terminate Clayton's parental rights.