COURT OF APPEALS OF VIRGINIA

Present:    Judges Clements, Kelsey and Senior Judge Annunziata
Argued at Alexandria, Virginia


JOSIAH BEATTY

                                                    MEMORANDUM OPINION* BY
v.      Record No. 2686-07-4                   JUDGE D. ARTHUR KELSEY
                                                           JULY 29, 2008
ALEXANDRIA DEPARTMENT OF
  HUMAN SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
John E. Kloch, Judge

Dale Warren Dover for appellant.

Mary Elliott O'Donnell (Ignacio Pessoa; Office of the City
Attorney, on brief), for appellee.

Gwena Kay Tibbits (Law Office of Gwena Kay Tibbits, on
brief), Guardian *ad litem* for the minor children.


Josiah Beatty appeals orders entered by the circuit court terminating his parental rights

with respect to three of his children.[1]  He concedes the evidence at trial was sufficient to justify

termination under Code § 16.1-283(C)(2).  On appeal, he claims only that the circuit court should

have rejected the termination petitions because the Alexandria Department of Human Services

(ADHS) violated his constitutional rights under the Thirteenth and Fourteenth Amendments of

the United States Constitution.[2]  Finding no legal or factual merit to this argument, we affirm.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The names and ages of these three children are identified in the respective termination
orders entered by the circuit court.

[2] At oral argument on appeal, Beatty's counsel agreed he was "not contesting the
sufficiency of the evidence, in the ordinary sense, under Code § 16.1-283(C)(2)" but rather
arguing only that, under the Thirteenth and Fourteenth Amendments, "this termination should
not have gone forward."  Oral Argument at 17:04 (May 20, 2008); see also id. at 11:04 & 11:19.
For this reason, we omit any discussion of the evidentiary record unrelated to the issues before

The Thirteenth Amendment provides that "[n]either slavery nor involuntary servitude . . . shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII, § 1. "The primary purpose of the Amendment was to abolish the institution of African slavery as it had existed in the United States at the time of the Civil War, but the Amendment was not limited to that purpose; the phrase 'involuntary servitude' was intended to extend 'to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results.'" United States v. Kozminski, 487 U.S. 931, 942 (1988) (citations omitted).

Beatty argues that an "invidious incident of slavery is the officious severing of the bonds of kinship based on race or slave status." Appellant's Br. at 6. ADHS's termination petition, Beatty contends, is little more than an "artifice" intended to exacerbate "the diaspora in the African-American family." Id. at 10. This hyperbolic rhetoric, however, has no basis in fact. No evidence in this case supports Beatty's assertion that ADHS discriminated against him on the basis of race or in any way imposed upon him the "badges and incidents of slavery," Civil Rights Cases, 109 U.S. 3, 20 (1883). Nor did ADHS order Beatty into compulsory labor within the meaning of the Thirteenth Amendment's ban on involuntary servitude. The circuit court, therefore, correctly rejected Beatty's claim that ADHS violated the Thirteenth Amendment by filing the parental termination petitions.

The same can be said for Beatty's claim that ADHS violated the Fourteenth Amendment by punishing him for his alleged poverty. Beatty cites no authority, and we know of none,

---

the Court on appeal. See generally Fairfax County Redev. v. Worcester Bros., 257 Va. 382, 384, 514 S.E.2d 147, 148 (1999) ("Under well established principles, we recount only those facts relevant to our resolution of the appeal."); Taylor v. Taylor, 27 Va. App. 209, 212, 497 S.E.2d 916, 917 (1998) ("We recite only those facts relevant to the issues properly before us on appeal.").

recognizing a constitutional right of an indigent to be an unfit parent and yet avoid the legal consequence of parental termination. A child needs shelter, food, and medical care to live. No parent can claim his indigency bestows upon him a constitutional privilege to neglect a child's basic needs. As one court so well put the point:

> In our system of law directed toward the best interests of a juvenile, termination of parental rights is not a penalty imposed on account of poverty. Parental inability to reach heights of economic success is no basis to sever the precious relationship which normally exists between parent and child. However, that same system of laws pertaining to juveniles cannot reward parental bankruptcy evidenced by indifference or inexcusable lethargy adversely affecting the life and living conditions demanded by a child's personal dignity.

In re Interest of D., 352 N.W.2d 566, 570 (Neb. 1984).

Beatty's poverty argument also founders on the facts. No evidence demonstrates that the circuit court's decision to terminate Beatty's parental rights had anything to do with his financial situation. Nor do any facts support Beatty's claim that his alleged indigency precluded him from fulfilling his paternal duties to his children. ADHS removed these children from their *mother's* apartment in 2004 for reasons later found to be abuse and neglect.[3] Beatty did not reside at that time with the children or their mother. In 2005, ADHS located Beatty and directed him to submit to a substance abuse and mental health evaluation. He did not respond to this directive for two years.[4] Nothing in the record shows that Beatty, a convicted felon, ever made any attempt to provide for any of the basic necessities of life for his children.[5]

_____

[3] The mother's parental rights were ultimately terminated as well. Chappell v. Alexandria Dep't of Human Servs., No. 2662-07-4, 2008 Va. App. LEXIS 267 (Va. Ct. App. June 3, 2008) (finding no error in circuit court's order terminating the mother's parental rights to her four minor children under Code § 16.1-283(C)(2)).

[4] Beatty admitted that, although ADHS representatives told him he would have to complete the substance abuse and mental health evaluation before he could gain custody of the children, he refused to do so because he was "being rebellious at the time."

[5] Although Beatty testified that he had helped the mother with caring for his children

In short, Beatty's alleged indigency — whether true or not and, if true, whether his fault or not — does not explain why he failed to satisfy any of the threshold paternal duties essential to parenting. As we have often said, "it is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Fields v. Dinwiddie County Dep't of Soc. Servs., 46 Va. App. 1, 11, 614 S.E.2d 656, 660 (2005) (citations and internal brackets omitted); see also Akers v. Fauquier County Dep't of Soc. Servs., 44 Va. App. 247, 257, 604 S.E.2d 737, 741 (2004) (citation omitted).

Finding no merit in Beatty's assertions that ADHS violated his rights under the Thirteenth and Fourteenth Amendments, we affirm the circuit court's orders terminating his parental rights.

Affirmed.

---

during a period from 2002 to 2003, he offered no evidence that he had attempted to provide for the children after ADHS became involved with them in late 2004.