JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Vel Litt (Litt) appeals the trial court's granting of judgment after a bench trial in favor of plaintiff-appellee Color Bar Printing Company (printer.)
{¶ 2} Litt approached the CEO of Color Bar, Roger Perlmuter (CEO), in 1997 inquiring about his company printing a "press kit" for her publication as well as printing the publication, "Living Magazine." "Living Magazine" was a bimonthly regional magazine that circulated in the affluent eastern suburbs and relied solely on advertisements for its revenue. The CEO agreed to print and "drop" the magazine at the post office for third class delivery. The parties had no written contract; Litt stated emphatically that she would never enter into a written contract.
{¶ 3} The first issue of "Living Magazine" was mailed in December of 1997, and subsequent issues went out in approximately two-month intervals until the November/December issue was mailed on November 18, 1998. This litigation concerns Litt's nonpayment for this issue and her claim that her payment should be set off because the delivery of the issue was late. Litt did not file a counterclaim against the printer.[1]
{¶ 4} The printer filed suit against "Vel Litt, d.b.a. Living Magazine[,] and Jerome Litt, d.b.a. Living Magazine." Jerome is Vel Litt's husband and a physician. Although the relationship between the Litts and the CEO was disputed, it appears from the record that they had a social relationship prior to their business relationship. The CEO testified, and the trial court accepted as a finding of fact, that Dr. Litt told the CEO that he would pay the bills incurred by the magazine.
{¶ 5} Litt claims, on the other hand, that neither she nor her husband had any personal liability for the bills. Rather, she claimed that her corporation, Windstar, was the responsible party. The CEO claims that he never contracted with Windstar and in fact was not aware of its existence until the litigation began. Litt admitted that she never corresponded with the printer on Windstar stationary but claimed that he should have been aware of the corporation because all her publications, which printer printed, contained the information that "Living Magazine" was owned by Windstar.
{¶ 6} The trial court found that printer had a contract only with the Litts, not with Windstar, and that Litt paid all the bills either by check from an account owned by "Living Magazine" or by her personal American Express credit card.
{¶ 7} At trial, the printer presented extensive testimony from the CEO and a former employee concerning the printer's dealings with Litt. Litt's only witness was herself. After the trial, the court issued findings of fact and conclusions of law in which it found that Litt and Dr. Litt were responsible for the bills of the magazine and that although the November/December issue had gone out late, Litt had provided no evidence of damages resulting from that, and therefore was not entitled to a set off.
{¶ 8} The court also found that both sides contributed to the lateness of the mailing. The court noted that Litt failed to present expert testimony to prove that the issue was released late as a result of the printer's errors rather than her errors. She admitted in her testimony that she was not an expert in printing and did not know what the industry standard was for the reasonable amount of time for a publication to go out. The printer gave extensive testimony regarding the time-frames required to print and mail a publication. Litt admitted that in determining a reasonable amount of time, she had "to rely on the printer that is doing my magazine." Tr. at 214. The trial court emphasized Litt's lack of expert testimony on this question in its findings of fact. The court stated "that the printing was done within a reasonable period of time considering all the known variables and effort on both sides." Findings of Fact and Conclusions of Law at 6. The court also held that Litt's "failure to provide sufficient evidence to demonstrate that this loss of business meant a loss of profits, is fatal to [Litt's] claim of set-off." Id. at 6-7.
{¶ 9} Appellant Litt timely appealed pro se. Litt also attempted to represent her husband and her corporation Windstar. Because a person who is not an attorney may not represent another party in a court of law, this appeal is valid only for Litt herself.[2]
{¶ 10} For her first assignment of error, appellant states,
 {¶ 11} I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON APPELLANT'S ORAL CONTRACT CLAIM.
{¶ 12} The tenth assignment of error also addresses the parties' oral contract:
 {¶ 13} X. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEE ON APPELLEE'S CLAIM OF A VALID ORAL CONTRACT WITH APPELLANTS.
{¶ 14} First, we must explain that Litt mistakenly describes the lower court's judgment following a trial as granting summary judgment. There was no summary judgment granted in this case. Second, Litt mistakenly applies a summary judgment standard to the trial court's decision. As a result of a bench trial, the judge determined there was a valid oral contract.
{¶ 15} The standard applied to a trial verdict is whether the verdict is against the manifest weight of the evidence. Judgments supported by "some competent, credible evidence going to all the essential elements of a case will not be reversed by a reviewing court as being against the manifest weight of the evidence." Complete Gen.Constr. Co. v. Ohio Dept. of Transportation (2002) 94 Ohio St.3d 54, 62, quoting C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279, syllabus. We must assess, therefore, whether there is sufficient competent, credible evidence to support the trial court's verdict.
{¶ 16} The parties disputed the terms of their oral contract. Litt claimed that the printer breached the contract by delivering the magazine late, and the printer claimed that it delivered the magazine as promised.
{¶ 17} Specifically, Litt claimed that the oral contract between the parties promised delivery of the magazine by a date certain. The printer, on the other hand, claimed that its delivery date was dependent upon a variety of factors and that, in accordance with its routine practice, it had projected a tentative date, which changed several times throughout the layout and preparation of the magazine because of the changes requested.
{¶ 18} Litt provided only her testimony to support her position. The printer provided the testimony of both its CEO and a former employee to describe the process used in performing the oral contract, as well as the terms under which that contract was executed. In addition, the printer introduced into evidence posters with copies of each issue's time-frame for production, including mailing receipts, contact proofs and revision requests, all dated with many initialed by Litt. These exhibits showed that the November/December 1998 issue's production was in line with all the previous issues.
{¶ 19} The original mailing date was projected to be November 7th. After the changes and delays, the last projected date was November 19th. Despite an error on the printer's part in the postage mark, the magazine was actually mailed on November 18th, ahead of the last projection. Because, as the parties agreed, the magazine was mailed third class, it did not arrive at Litt's house until December 5th. From our review of the testimony and exhibits, we find that the manifest weight of the evidence supports the trial court's ruling that the oral contract described by the CEO existed and was executed according to its terms. Accordingly, the first and tenth assignments of error are overruled.
{¶ 20} The third, fifth, thirteenth and fourteenth assignments of error all address the money issues disputed by appellant. They state as follows:
 {¶ 21} III. THE TRIAL COURT ERRED IN CONCLUDING THAT THE AMOUNTS CHARGED FOR PRINTING AND ARTWORK BY APPELLEE COMPANY WERE REASONABLE AND THAT THE PRINTING WAS DONE WITHIN A REASONABLE PERIOD OF TIME.
 {¶ 22} V. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A SET OFF.
 {¶ 23} XIII. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEE ON APPELLEE'S CLAIM THAT THE APPELLANT FAILED TO PROVE HER DAMAGES.
 {¶ 24} XIV. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON APPELLEE'S CLAIM FOR CHARGES PLUS INTEREST FROM NOVEMBER 18, 1998 AGAINST APPELLANTS JOINTLY AND SEVERALLY.
{¶ 25} These assignments of error all challenge the trial court's findings that the printer's evidence supported his statement of his expenses incurred producing the magazine and that Litt failed to present any evidence of her alleged losses.[3] The printer introduced copies of the invoices for each of the six issues he produced, as well as copies of the issues, projected schedules, and a detailed list of the items involved in an invoice.
{¶ 26} Litt, on the other hand, provided no hard figures or any evidence of losses to support her testimony. The trial court did not err, therefore, in finding that the fees charged by the printer were reasonable and the work performed timely, that the printer's claim for its fees along with statutory interest was proper, and that Litt failed to establish any amount of damages which could be used in determining a set off.
{¶ 27} Accordingly, the third, fifth, thirteenth and fourteenth assignments of error are overruled.
{¶ 28} Appellant also assigns a number of errors to the court's rulings regarding the evidence produced at trial:
 {¶ 29} IV. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON APPELLEE'S CLAIM OF EXPERT STATUS AT TRIAL.
 {¶ 30} VI. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEE BASED ON UNREASONABLE AND FALSE DOCUMENTATION IN A COURT OF LAW.
 {¶ 31} IX. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEE'S CLAIM OF PREPONDERANCE OF THE EVIDENCE.
 {¶ 32} XI. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON APPELLEE'S CLAIM OF BAIT AND SWITCH.
 {¶ 33} XII. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEE BASED ON THE COURT'S FINDINGS FOR LACK OF EVIDENCE.
{¶ 34} First, appellant claims that she should have been granted expert witness status[4] so she could provide evidence of the printer's mistakes. However, not only did she not request expert status concerning printing knowledge at trial, she actually twice denied that she was an expert on printing times. She also fails to present any argument whatsoever in her brief on this assignment of error.
{¶ 35} Accordingly, the fourth assignment of error is overruled.
{¶ 36} Litt also alleges that the printer introduced into evidence false and unreasonable documentation. Litt failed, however, to object at trial to the authenticity of any of the evidence. The "failure to timely advise a trial court of possible error, by objection or otherwise, results in a waiver of the issue for purposes of appeal." Goldfuss v.Davidson (1997), 79 Ohio St.3d 116, 121. Because Litt did not object to any evidence printer presented at trial, she is precluded from raising that objection on appeal. Assignment of error number IV is overruled.
{¶ 37} In her ninth assignment of error, Litt also complains that the court erred when it found that the preponderance of the evidence supported the printer's case. She never disputed, however, the authenticity of the invoices produced during the trial, and she failed to argue that the copies of the magazines were not what the printer had produced for her.
{¶ 38} In assignment of error twelve Litt claims the court erred in its "findings for lack of evidence." Litt fails, however, to argue this assignment of error in her brief. "The court may disregard an assignment of error presented for review if the party raising it * * * fails to argue the assignment separately in the brief, as required under App.R. 16(A)." App.R. 12(A)(2).
{¶ 39} In assignment of error eleven Litt raises a claim for the first time: an alleged "bait and switch." There was no discussion at trial concerning a bait and switch scheme. "As a general rule, this court will not consider arguments that were not raised in the courts below." See State v. 1981 Dodge Ram Van (1988), 36 Ohio St.3d 168, 170,522 N.E.2d 524. Belvedere Condominium Unit Owners' Association v. R.E.Roark Companies, Inc. (1993), 67 Ohio St.3d 247, 279. Litt fails, moreover, to argue this issue in her brief. App.R. 12(A)(2). Accordingly, assignments of error XI and XII are overruled.
{¶ 40} In her second and seventh assignments of error, Litt addresses issues on behalf of her husband and her corporation. These assignments state,
 {¶ 41} II. THE TRIAL COURT ERRED IN FINDING NO LEGAL BASIS FOR APPELLANT TO EXIST AS A LIMITED LIABILITY COMPANY DULY LICENSED TO OPERATE IN THE STATE OF OHIO.
 {¶ 42} VII. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEE ON APPELLEE'S CLAIM OF THIRD PARTY LIABILITY.
{¶ 43} As we stated above, because Litt is not a licensed attorney, she cannot represent her husband or her corporation in a court of law. Therefore assignments of error II and VII are not well taken.
{¶ 44} Litt's remaining assignment of error states,
 {¶ 45} VIII. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEE IN VIOLATION OF RULE 11 [SIGNATURE REQUIREMENT].[5]
{¶ 46} Litt provides no argument to explain what she is referring to in this assignment of error. Again, there was no reference to Rule 11 in the trial. Because this issue was neither addressed at trial nor discussed in the brief, we will not address it. App.R. 12(A)(2).
{¶ 47} The trial court did not err in its decision that Litt was responsible for the bills she incurred with the printer and that she had failed to prove her damages against the printer.
The judgment of the trial court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, J., CONCURS; MICHAEL J. CORRIGAN, J., CONCURS INJUDGMENT ONLY.
[1] Litt's corporation, Windstar, was never properly a party to the suit, although Windstar attempted to intervene and filed a counterclaim. The counterclaim was filed solely on behalf of Windstar, never on behalf of Litt and Dr. Litt.
[2] This court sua sponte dismissed Jerome Litt and Windstar's appeals. As we stated in that order, "[a] corporation cannot maintain litigation or appear in court through an officer of the corporation or an appointed agent not admitted to the practice of law. Colon v. SafeSystems, Inc. (Nov. 12, 1992), Cuyahoga App. No. 61151. Additionally, appellant Vel Litt, who is not a licensed attorney in Ohio, cannot render legal services on behalf of another person. Toledo Bar Assn. v. Palmer
(2000), 90 Ohio St.3d 458 * * *."
[3] The only evidence provided by Litt was her own testimony, along with several copies of the magazine in various stages of completion, Windstar's articles of incorporation certificate by the secretary of state, her proposal to develop the magazine, and a receipt for film dated 11-24-98.
[4] {¶ a} Evid.R. 702 governs the qualifications required of expert witnesses. It states:
 {¶ b} A witness may testify as an expert if all of the following apply:
 {¶ c} (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ d} (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ e} (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 {¶ f} (1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 {¶ g} (2) The design of the procedure, test, or experiment reliably implements the theory;
 {¶ h} (3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.
[5] Although Litt does not include the bracketed words in her assignments of error on page v of her brief, she does include them in the body of the brief.